JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Lourdes Mercado guilty of two counts of obstructing justice, violations of R.C. 2921.32. In this appeal, she contests the evidence supporting her convictions, the jury instructions and her sentence.
 I {¶ 2} Mercado first argues that the state lacked sufficient evidence to prove she committed the offense with the requisite intent.
 {¶ 3} Our review of the sufficiency of the evidence to support a criminal conviction "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the [appellant's] guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Statev. Moore, 81 Ohio St.3d 22, 40, 1998-Ohio-441. Thus, for us to sustain Mercado's argument, we would have to determine that no rational trier of fact could find the essential elements of obstruction of justice.
 {¶ 4} R.C. 2921.32(A)(3), as applied in this case, states "[n]o person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, * * * shall * * * [w]arn the other person or child of impending discovery or apprehension."
 {¶ 5} A person acts purposely when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 6} The evidence, viewed in a light most favorable to the state, showed that law enforcement officers working undercover had arranged to buy 27 kilograms of cocaine from a source in Texas. In drug buys of this size, it is commonplace for the dealer to send an agent to inspect the buyer and ensure that proper arrangements had been made for the transaction. The drugs would be hidden within a van arriving from Texas, and a garage space with privacy would be needed to disassemble the van and retrieve the hidden drugs.
 {¶ 7} To that end, an undercover agent posing as a drug buyer met Javier Prieto and his wife at the airport and transported them to a nearby hotel. The police had previously arranged drug buys at the hotel and they made hotel management aware of the impending buy. If all went according to plan, Prieto would look over the arrangements made for the transaction and, assuming that those arrangements were to his liking, the drugs would be delivered by van the following day.
 {¶ 8} Prieto and his wife did not speak English, and they had difficulty communicating with the hotel staff. A manager asked Mercado, a housekeeping employee, to translate. In response to their questions about nearby shopping, Mercado directed the Prietos to a nearby store and arranged for their transportation. She gave them a business card and told them to call her if they needed anything else.
 {¶ 9} When the police learned that Mercado had been speaking with the Prietos, they spoke to her and informed her about their investigation. They stressed the need for secrecy and told her to act naturally and "not give up our position."
 {¶ 10} Later that day, Prieto told the undercover officer posing as the drug buyer that a maid at the hotel told him that the police were watching him and his wife. Prieto quickly decided that his wife should return to Texas. Not wanting the deal to go bad, the undercover officer played along and took the Prietos to the airport where the wife boarded a plan and returned to Texas. After some very tense moments, the drug deal then went forward as planned and the police arrested Prieto.
 {¶ 11} After the arrest, the police determined that Mercado had been the maid who alerted the Prietos to the police surveillance. Mercado at first denied saying anything to the Prietos, but then admitted telling them that "this is not a good place to do illegal things. And they should go to another hotel or they would be arrested if they stayed." When asked why she alerted the Prietos, she said that she felt sorry for them.
 {¶ 12} We have no difficulty finding that the state presented sufficient evidence to show that Mercado purposely warned the Prietos of their impending discovery by the police after being warned not to by the police. By telling the arresting officers that she "felt sorry" for the Prietos, Mercado established her purpose to warn them so as to avoid apprehension. And there is no question that the warning she gave to the Prietos hindered the police in apprehending them. Upon learning of the surveillance, Prieto's wife immediately returned to Texas. Ample testimony showed that the entire operation was thrown into disarray, as long-established plans had to be changed on the spot. This evidence was sufficient to prove the offense of obstruction of justice.
 {¶ 13} Mercado cites to State v. Bronaugh (1980), 69 Ohio App.2d 24, for the proposition that there was insufficient evidence to show obstruction of justice because the state failed to prove that there was an underlying crime committed. This citation is correct to a point; however, in State v. Mootispaw (1985), 23 Ohio App.3d 142, the court of appeals held that it was not necessary to show that the specific person illegally assisted was actually convicted of a crime and that it was sufficient to show that the person illegally assisted was charged with a crime. The court stated:
 {¶ 14} "Obviously one cannot hinder the prosecution or conviction of another for crime unless a crime has actually occurred. The statute does not require, however, that the specific person being legally assisted be actually convicted of such crime. To hold otherwise would emasculate the purpose and intent of the legislature expressed in unambiguous terms. It is sufficient to show that defendant's husband was charged with a crime, and that defendant hindered his prosecution or conviction." Id. at 144.
 {¶ 15} In this case, the state did prove that an underlying crime occurred. It presented Prieto's testimony that he pleaded guilty to drug trafficking stemming from the facts surrounding the surveillance at the hotel. He agreed to testify against Mercado as part of his plea bargain. Hence, the prerequisite criminal conduct had been proven.
 II {¶ 16} Mercado next argues that the court erred by refusing to instruct the jury on the lesser included offense of obstructing official business.
 {¶ 17} In State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus states:
 {¶ 18} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (State v. Kidder (1987), 32 Ohio St. 3d 279, 513 N.E.2d 311, modified)."
 {¶ 19} R.C. 2921.31(A) states, "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."
 {¶ 20} The cases conflict on the question of whether obstructing official business is a lesser included offense of obstruction of justice. In State v. Gordon (1983), 9 Ohio App.3d 184, the First Appellate District held that obstructing official business under R.C.2921.31 is a lesser included offense of obstructing justice under R.C.2921.32(A)(1). However, in Cuyahoga Falls v. Cox (Jan. 25, 1989), Summit App. No. 13644, the Ninth Appellate District held that the offense of obstruction of justice could be committed without the offense of obstructing official business also being committed. That court found that R.C. 2921.32 does not require that the offender's actions actually hamper or impede the process of bringing a criminal to justice.
 {¶ 21} We hold that obstructing official business is not a lesser included offense of obstruction of justice because the elements of the two offenses are such that the greater offense can be committed without the lesser offense being committed. One can obstruct justice by warning the subject of a pending police investigation of impending apprehension without actually obstructing official business by hampering the performance of a police officer's duty. For example, in this case it is possible that Mercado could have alerted the Prietos, but the Prietos might not have believed her. They could have continued on with the planned drug transaction with no regard to the warning or without even mentioning that warning to the police; hence, Mercado's warning would not actually have hindered the police from effectuating the arrest. Thus, the second part of the Deem test is not satisfied. Since obstructing official business is not a lesser included offense of obstruction of justice, the court did not err by refusing to give the requested instruction.
 IV {¶ 22} The court imposed a one-year sentence on each count and ordered that they be served consecutively. Mercado argues that the court erred by ordering the sentences to be served consecutively because it failed to make the required findings.[1]
 {¶ 23} When a trial court imposes consecutive sentences under R.C.2929.14(E)(4), it must also comply with R.C. 2929.19(B)(2)(c), which requires that the court make a finding that gives its reasons for selecting the sentences imposed. This requirement is separate and distinct from the duty to make findings required by R.C. 2929.14(E)(4). The court is not required to place its findings and the reasons for its findings side by side. See State v. Cotrell, Cuyahoga App. No. 82870, 2003-Ohio-627, at ¶ 76.
 {¶ 24} A trial court may not impose consecutive sentences for multiple offenses under R.C. 2929.14(E)(4) unless it finds three statutory factors. State v. Comer (2003), 99 Ohio St.3d 463, 466, 2003-Ohio-4165. First, the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a)-(c).
 {¶ 25} The court first found that consecutive sentences were necessary to punish Mercado. Next, the court determined that consecutive sentences were not disproportionate to the seriousness of Mercado's conduct by finding that Mercado's actions placed the undercover agent orchestrating the drug buy at great risk and left him in a vulnerable position once the Prietos learned that they were being watched. Finally, the court found that the harm caused by Mercado's offense was so great that a single prison term would not adequately reflect the seriousness of her conduct. These findings fully satisfied the court's obligations.
 V {¶ 26} Mercado next argues that the court failed to make a finding that her sentence was consistent with similarly situated offenders.
 {¶ 27} While R.C. 2929.11(B) mandates that a sentence be "consistent with sentences imposed for similar crimes committed by similar offenders," we have held that the goal of the statute is to achieve "consistency" not "uniformity." State v. Klepatzki, Cuyahoga App. No. 81676, 2003-Ohio-1529. The court is not required to make express findings that the sentence is consistent with other similarly situated offenders.State v. Richards, Cuyahoga App. No. 83696, 2004-Ohio-4633. We have also found that in order to support a contention that his or her sentence is disproportionate to sentences imposed upon other offenders, a defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal. State v. Woods, Cuyahoga App. No. 82789, 2004-Ohio-2700.
 {¶ 28} At no point did Mercado raise the issue of proportionality with the court in a manner that would preserve the issue for appeal. And even if she had, the law does not require the court to make specific findings. Moreover, Mercado cites to no other decisions to show why her sentence is out of proportion to sentences meted out to similarly situated offenders.
 {¶ 29} Even if Mercado had made a proper initial showing, we would have little difficulty finding that consecutive, one-year sentences were not disproportionate under the circumstances. Mercado's actions jeopardized the apprehension of a major drug trafficker. The sheer amount of cocaine involved in the investigation, and the man-hours spent setting up the transaction, made this no ordinary drug deal. Moreover, the court correctly noted how Mercado's actions placed the undercover officer dealing with the Prietos at grave risk. All of these factors show that the court's sentence was in proportion to Mercado's.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., Concurs. Dyke, P.J., concurs with separate opinion.
[1] In State v. Lett (May 31, 2005), Cuyaghoga App. Nos. 84707 and 84729, we held en banc that the imposition of consecutive sentences does not implicate the Sixth Amendment as construed in Blakely v. Washington
(2004), ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403.
 CONCURRING OPINION